IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE:  RADIOSHACK CORP. | ) | MDL DOCKET NO. 1875 |
| "ERISA" LITIGATION | ) | ALL CASES |
| | ) | |
| _____ | ) | |
| ROBERT MAXWELL and | ) | |
| ROBERT OUTLAW | ) | |
| | ) | |
| VS. | ) | ACTION NO.  4:06-CV-499-Y |
| | ) | (Cons. w/ 4:06-CV-900-Y) |
| RADIOSHACK CORPORATION, ET AL. | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| ALAN GOLDSTEIN and | ) | |
| KEITH RIDERS | ) | |
| | ) | |
| VS. | )' | ACTION NO.  4:07-CV-635-Y |
| | ) | |
| RADIOSHACK CORPORATION, ET AL. | | |

**AMENDED CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT**

Plaintiffs, by their attorneys, allege upon personal knowledge as to his/her own acts and upon information and belief as to all other matters, based upon the investigation of his/her counsel, which included a review of news reports, press release, filings with the Department of Labor and the Securities and Exchange Commission ("SEC"), individually and on behalf of all others similarly situated, alleges as follows:

## I.     INTRODUCTION

1.     This is a class action brought pursuant to §§ 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), against the fiduciaries and co-fiduciaries of the Company 401(k) Plan and the Company Supplemental Stock Purchase Plan (collectively the "Plans") for the violations of ERISA alleged herein.

2.      Plaintiffs' claims arise from the failure of defendants, who are fiduciaries of the Plan, to act solely in the interest of the participants and beneficiaries of the Plan, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plan's assets from March 31, 2005 through the present ("Class Period").

3.      This action is brought on behalf of the Plan and seeks losses to the Plan for which defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, and 1132(a)(2).  In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3)), Plaintiffs seek other equitable relief from defendants, including, without limitation, injunctive relief and, as available under applicable law, the imposition of a constructive trust, restitution, and other monetary relief.

4.      Because Plaintiffs' claims apply to the participants and beneficiaries as a whole, and because ERISA authorizes participants such as Plaintiffs to sue for breaches of fiduciary duty on behalf of the plan, Plaintiffs bring this as a class action on behalf of all participants and beneficiaries of the Plan during the Class Period.

5.      Because the information and documents on which Plaintiffs' claims are based are, for the most part, solely in defendants' possession, certain of Plaintiffs' allegations are by necessity upon information and belief.  At such time as Plaintiffs have had the opportunity to conduct additional discovery and/or been provided with all copies of plan documents as required by ERISA and Department of Labor rules promulgated thereunder, Plaintiffs will, to the extent necessary and appropriate, amend her Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

## II.    JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).  ERISA provides for nation-wide service of process.  ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All of the defendants are either residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them.

7.    Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some defendants reside and/or transact business in this district.

## III.    PARTIES

### A.    Plaintiffs

8.    Plaintiff Robert Outlaw was an employee of the Company and is a participant in the Radioshack 401 (k) Plan and continues to be a participant or beneficiary of that  Plan, within the meaning of ERISA §§ 3(7) and 502(a), 29 U.S.C. §§ 1002(7) and 1132(a).

9.    Plaintiff Robert Maxwell was an employee of the Company and is a participant in the Radioshack 401 (k) Plan and continues to be a participant or beneficiary of that  Plan, within the meaning of ERISA §§ 3(7) and 502(a), 29 U.S.C. §§ 1002(7) and 1132(a).

10.    Plaintiff Keith Reiders was an employee of the Company and is a participant in the Radioshack 401 (k) Plan and continues to be a participant or beneficiary of that  Plan, within the meaning of ERISA §§ 3(7) and 502(a), 29 U.S.C. §§ 1002(7) and 1132(a).

11.    Plaintiff Alan Goldstein was an employee of the Company and is a participant in the Radioshack 401 (k) Plan and continues to be a participant or beneficiary of that  Plan, within the meaning of ERISA §§ 3(7) and 502(a), 29 U.S.C. §§ 1002(7) and 1132(a).

**B.    Defendants**

### 1.    The Company Defendants

12.    Defendant Radioshack Corporation is a Delaware corporation with its principal executive offices located at 3300 Radioshack Circle, Fort Worth, Texas.

13.    The "Radioshack Defendants" identified below include the directors of the Company at relevant times during the Class Period who were members of the Management Development and Compensation Committee (the "Board Committee") which, according to the Company's filings with the Securities and Exchange Commission, "administers and reviews the Company's incentive based and equity based compensation plans".

14.    Defendants Robert K. Kamershen, Frank J. Belatti, Daniel K. Freeham, and Jack L. Messman (sometimes hereinafter collectively referred to as the Radioshack Defendants") were members of the  Board Committee and as such had fiduciary duties including the administration of the Plans.

### 2.    The Administration Committee Defendants

15.    Defendant Administration Committee of Radioshack Corporation (the "Administration Committee") and defendants John Does 1-10 being members of the Administration committee during the Class Period had responsibility for the administration of the Plans.  At all relevant times, the members of the Administration Committee were, upon information and belief, all employees, officers, or directors of, or appointed by, Radioshack.

16.     Defendants D. Johnson, R. Ray and Arnold Grothues were members of the Administration Committee during the Class Period.

## IV.  SUBSTANTIVE ALLEGATIONS

### A.     The Plans

#### 1.     Radioshack 401 (k) Plan

17.     The 401(k) Plan is a defined contribution 401(k) Plan qualified under Section 401 of the Internal Revenue Code, covering eligible employees of the Company and its participating subsidiaries.  The Plan is offered on a voluntary basis to all eligible full-time and part-time employees and is subject to the provisions of the Internal Revenue Code of 1986, as amended (the "Code"), and the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

18.     At all relevant times, the Plan had two separate components:  (1) a contributory portion, which consisted of participant contributions, and (2) a matching component, which consisted entirely of employer contributions.

#### 2.     The Radioshack Supplemental Stock Purchase Plan (The "Supplemental Plan")

19.     The purpose of the Supplemental Plan as described by Radioshack "is to assist employees of [the Company] in building personal net worth and to encourage ownership in the Company by providing an opportunity for regular investment in the Company's common stock after an employee has reached his or her maximum annual salary deferral contribution limit under the 401(k) plan.

20.     The Supplemental Plan is subject to Title I of ERISA relating to the protection of employee benefit rights.

21.    The Supplemental Plan is administered by the Administration Committee which is appointed by the Board of Directors.

22.    The Company makes matching contributions to the Supplemental Plan equal to 80% of the participants' contributions.  Participant contributions to the Supplemental Plan may equal up to 8% of the gross wages.

## V.  BACKGROUND

23.    Radioshack is consumer electronics retailer which offers mainly low priced accessories for use with higher priced consumer electronics sold by other retailers such as Best Buy and Circuit City.  In 2002, for example 55% of Radioshack's sales revenue was generated by sales of what the Company calls "wireless, accessories and batteries".

### A.    The 401(k) Plan Fiduciaries Caused The Plans To Invest Millions Into Putnam Funds

24.    The 401(k) Plan Fiduciaries were and continue to be responsible for selecting investment alternatives and service providers for the 401(k) Plan.  These selections must be made prudently and solely in the interests of the Plans and their Participants.  The 401(k) Plan Fiduciaries also have fiduciary responsibilities to monitor these selections and to evaluate the selections periodically to ensure they remain prudent based on existing economic conditions and available investment opportunities.

25.    The 401(k) Plan Fiduciaries used their discretion by selecting only Putnam Funds for the 401(k) Plan from 1996 through 2003 and then selecting primarily Putnam Funds from 2004 through the present.  For example, in 2006, there were 16 Putnam or Putnam-affiliated funds out of the total 23 funds, consisting of more than 80% of the Plan's non-RadioShack Stock investments.

26.    The Putnam funds selected by the 401(k) Plan Fiduciaries pay Putnam Management subsidiaries and affiliates fees for investment advisory , custodial, trust, administrative, distribution, and other services.  These fees are charged to the investors in the Putnam funds by deducting the fees from the Putnam funds.  The Putnam funds pay these fees directly to Putnam Management.  However, the payment of the fees impacts the value of the 401(k) Plan's assets, as earnings of the Putnam funds are net of fees and expenses.

27.    Large plans like the 401(k) Plan can achieve substantial savings by negotiating single-client or separate account investments at rates below those of the lowest providers in the mutual fund industry.  Upon information and belief, the 401(k) Plan Fiduciaries have failed to take advantage of the economies of scale and the 401(k) Plan's bargaining power.

28.    Since 2000, the Putnam funds selected by the 401(k) Plan Fiduciaries have performed below average, particularly after taking into account the fees charged by Putnam and the nature of the fund.  For example, the Putnam Voyager Fund's prospectus indicates that the Voyager fund paid 1.10% in fees for a fund that mirrors the Russell 1000.  As of December 31, 2006, the 401(k) Plan invested over $37 million in the Voyager Fund.  Given that the Voyager Fund is essentially and actively-managed index fund that fails to perform as well as the index, the 401(k) Plan Fiduciaries easily could have selected better performing and less expensive investment alternatives.

29.    In addition to the high fees and unacceptable performance, the Putnam funds in the 401(k) Plan became inappropriate and unsuitable investments for the 401(k) Plan as a result of a variety of improper and illegal actions by Putnam.  For example, in 2004, Putnam paid $110 million to settle federal and state allegations regarding improper market timing.  In March 2005, Putnam paid to the Securities and Exchange Commission ("SEC") a $40 million fine for

improper shelf-space arrangements and failing to disclose potential conflicts of interest.  In May 2005, Putnam agreed to a $108.5 million settlement to repay investors for improper market timing and short-term trading.  In January 2007, Putnam's former CEO, Lawrence Lasser, paid to the SEC a fine of $75,000 to resolve charges of improper and undisclosed revenue sharing.  In February 2007, Putnam paid the NASD a fine of $175,000 for the improper payment of expenses to brokers and their spouses from 2001 to 2004.  Despite these egregious acts by Putnam, the 401(k) Plan Fiduciaries failed to replace Putnam as a trustee or to replace the Putnam funds in the 401(k) Plan.

## VI.  DEFENDANTS' FIDUCIARY STATUS

30.    [Named Fiduciaries].  ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).  The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

31.    [De Facto Fiduciaries].  ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

32.    Each of the defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its participants under ERISA in the manner and to the extent set forth in the Plan's documents as detailed herein, through their conduct, and under ERISA.

33.    As fiduciaries, defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plan, and the Plan's investments solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

34.    Plaintiffs do not allege that each defendant was a fiduciary with respect to all aspects of the Plan's management and administration.  Rather, as set forth below, in the separate Counts, Plaintiffs allege that defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each defendant are based on such specific discretion and authority.

35.    ERISA permits the fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries must still in fact act solely in the interest of participants and beneficiaries, not in the interest of the sponsor.  Moreover, all Plan fiduciaries were obliged, when wearing their fiduciary hat(s) to act independently of the Company despite the authority under the governing Plan documents given to the Company to appoint the VRC and BIC, or to direct the conduct of any of them with respect to the Plan, its investments, or the disclosure of information between and among fiduciaries, or from fiduciaries to the participants.

A.    **The Radioshack's Defendants' Fiduciary Status**

36.    The Committee Defendants were appointed and supervised by the Radioshack Defendants.

37.    The Radioshack Defendants, at all applicable times, exercised control over the activities of its officers and employees who were members of the Administration Committee in the performance of their fiduciary functions with respect to the Plans, and could hire, terminate, and replace such employees at will.  The Radioshack defendants are thus, responsible for the activities of its officers and employees and members of the Administration Committee appointed by the Radioshack Defendants through principles of agency and *respondeat superior* liability.

38.    Finally, as a matter of law, Radioshack is imputed with the knowledge that the Administration Committee Defendants had of the misconduct alleged herein.

39.    Consequently, in light of the foregoing duties, responsibilities, and actions, Radioshack Defendants were fiduciaries of the Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), during the Class Period, in that they exercised discretionary authority or discretionary control respecting management of the Plans, exercised authority or control respecting management or disposition of the Plans' assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

B.    **The Defendants' Fiduciary Status**

40.    Radioshack, its directors and employees who were members of the Administration Committee exercised fiduciary duties in connection with the administration of the Plan.  The Radioshack Defendants also exercised fiduciary duties through the exercise of their power to appoint, monitor and control members of the Administration Committee.

## VII.  CLASS ACTION ALLEGATIONS

41.    Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated (the "Class").

42.    All persons who were participants in or beneficiaries of the Plan at any time during the Class Period, i.e., between April 1, 2005 and the present, and whose accounts included investments in The Company.

43.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time, the latest Report of the Plans indicates that approximately 8,000 persons were participants in The Plan.  Plaintiffs believe there are, at a minimum, thousands of members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

44.    Common questions of law and fact exist as to all members of the Class making certification appropriate under Rule 23(b)(3) and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)    whether Defendants each owed a fiduciary duty to Plaintiffs and members of the Class;

        (b)    whether Defendants breached their fiduciary duties to Plaintiffs and members of the Class by failing to act prudently and solely in the interests of the Plan' participants and beneficiaries;

        (c)    whether Defendants violated ERISA; and

(d)      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.      Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' and the other members of the Class each sustained damages arising out of the Defendants' wrongful conduct in violation of federal law as complained of herein.

46.      Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action, complex, and ERISA litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

47.      Class action status is also warranted under the other subsections of Rule 23(b)(1) and (b)(2) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## VIII.  DEFENDANTS' RESPONSIBILITIES UNDER APPLICABLE LAW

48.      ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

49.      ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through

use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

50.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants to seek equitable relief from defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

51.    ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

52.    These fiduciary duties under ERISA §§ 404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence and are the "highest known to the law." They entail, among other things:

(a)    The duty to conduct an independent and thorough investigation into, and to continually monitor, the merits of all the investment alternatives of a plan, , to ensure that each investment is a suitable option for the plan;

(b)    The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor; and

(c)    The duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know

that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

53.    An adequate investigation by any of the defendants would have revealed to a reasonable fiduciary that investment by the Plans in Company stock, under the circumstances described herein, was imprudent.  Such a fiduciary would have acted to protect participants against unnecessary losses, and would have taken appropriate steps to protect the Plans from losses due to the Company's improper conduct.

54.    Defendants had available to them several different options for satisfying their duties, including:  a) making appropriate public disclosures as necessary; b) divesting the Plans of Company stock; c) discontinuing further matching contributions in Company stock; d) shifting the stock holdings in the Company stock to cash pending an adequate investigation of the Company; e) consulting independent advisors regarding appropriate measures to take in order to prudently and loyally serve the participants of the Plan.  The Defendants did not take any of these actions and, instead, stood idly by as the tremendous risks their fiduciary failures created turned into tremendous losses.

55.    Upon information and belief, defendants regularly communicated with employees, including Plan participants, about the Company's performance, future financial and business prospects, and Company stock through transmission of financial reports, and the prospectus for the Company Exchange.  These communications were directed specifically at employees/Plan participants.  As such, these communications were acts of Plan administration, and the persons responsible for the communications were ERISA fiduciaries in this regard.

56.    As a consequence of these communications, the Company fostered an inaccurately rosy picture of the soundness of the Company stock as a Plan investment.  As such, Plan

participants could not appreciate the true risks presented by investments in Company stock and therefore could not make informed decisions regarding investments in the Plan.

57.    Despite defendants' communications with participants regarding Company stock, defendants failed to disclose the significance and the risks posed by an investment in the Company.  Therefore, under ERISA, defendants had an affirmative duty to disclose this information so that participants and other Plan fiduciaries could make informed decisions regarding assets of the Plans.

58.    Plaintiffs therefore bring this action under the authority of ERISA § 502(a)(2) for Plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by the Defendants for violations under ERISA § 404(a)(1) and ERISA § 405(a).

59.    Insofar as any defendant is sued alternatively as a knowing participant in a breach of fiduciary duty for equitable relief, Plaintiffs proceed pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## IX.  ERISA § 404(C) DEFENSE INAPPLICABLE

60.    ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from participants' exercise of control over investment decisions.  In order for § 404(c) to apply, participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the procedural and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated under it.

61.    ERISA § 404(c) does not apply here for several reasons.  First, ERISA § 404(c) does not and cannot provide any defense to the Plan fiduciaries' imprudent decision to select and

continue offering Company stock in the Plan, as that decision was not made or controlled by the participants.   See Final Reg. Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans) ("Final 404(c) Reg."), 57 Fed. Reg. 46906-01, 1992 WL 277875, at *46924 n.27 (Oct. 13, 1992) (codified at 29 C.F.R. pt. 2550).

62.     Second, even as to participant directed investment in Company stock, ERISA § 404(c) does not apply because defendants failed to ensure effective participant control by providing complete and accurate material information to participants regarding Company stock. See 29 C.F.R. § 2550.404c-1(b)(2)(i)(B) (the participant must be provided with "sufficient information to make informed decisions").  Such failures are detailed herein at paragraphs __. As a consequence, participants in the Plan did not have informed control over the portion of the Plan's assets that were invested in Company stock as a result of their investment directions, and the Defendants remained entirely responsible for losses that result from such investment.

63.     Because ERISA § 404(c) does not apply here, Defendants' liability to the Plan, the Plaintiffs and the Class (as defined below) for losses caused by the Plan's investment in Company stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period.

## X.  CAUSES OF ACTION

### COUNT ONE

### Against Radioshack Defendants Failure To Monitor Fiduciaries

64.     Plaintiffs incorporate by this reference the allegations above.

65.     This Count alleges fiduciary breach against the Radioshack Defendants (the "Monitoring Defendants").

66.     As alleged above, during the Class Period the Monitoring Defendants were fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

67.     As alleged above, the scope of the fiduciary responsibilities of the Monitoring Defendants included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries

68.     Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

69.     The monitoring duty further requires that appointing fiduciaries have procedures in place so that on an ongoing basis they may review and evaluate whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need).  In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to Plan participants or for deciding whether to retain or remove them.

70.     Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan

assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

71.     The Monitoring Defendants breached their fiduciary monitoring duties by, among other things: (a) failing, at least with respect to the Plan's investment in company stock, to monitor their appointees, to evaluate their performance, or to have any system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and inaction with respect to company stock; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of the Company's highly risky and inappropriate business and accounting practices, and the likely impact of such practices on the value of the Plan's investment in Company stock; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan's assets; and (d) failing to remove appointees whose performance was inadequate in that they continued to make and maintain huge investments in Company stock despite their knowledge of practices that rendered The Company stock an imprudent investment during the Class Period for participants' retirement savings in the Plan, and who breached their fiduciary duties under ERISA.

72.     As a consequence of the Monitoring Defendants' breaches of fiduciary duty, the Plan suffered tremendous losses.  If the Monitoring Defendants had discharged their fiduciary monitoring duties as described above, the losses suffered by the Plan would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiffs and the other Class members, lost millions of dollars of retirement savings.

73.    Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), the Monitoring Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT TWO

### Co-Fiduciary Liability Against All Defendants

74.    Plaintiffs incorporate by this reference the allegations above.

75.    This Count alleges co-fiduciary liability against all defendants (the "Co-Fiduciary Defendants").

76.    As alleged above, during the Class Period the Co-Fiduciary Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

77.    As alleged above, ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  The Co-Fiduciary Defendants breached all three provisions.

78.    Knowledge of a Breach and Failure to Remedy:  ERISA § 405(a)(3), 29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if, he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.  Defendants knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.  In

particular, they did not communicate their knowledge of the Company's illegal activity to the other fiduciaries.

79.    The Company through its officers and employees, withheld material information from participants concerning the Company, and profited from such practices, and, thus, knowledge of such practices is imputed to The Company as a matter of law.

80.    Defendants, by virtue of their positions at The Company and/or The Company, participated in and/or knew about the Company's concealment of material information and the Company Exchange.

81.    Defendants knew:  a) that the Defendants were breaching their duties by continuing to invest in company stock; and b) that the Administration Committee Defendants were breaching their duties by providing incomplete and inaccurate information to participants. Yet, they failed to undertake any effort to remedy these breaches.

82.    Knowing Participation in a Breach:  ERISA § 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.  Defendants knowingly participated in the fiduciary breaches of the Defendants in that it benefited from the sale or contribution of its stock at artificially inflated prices.  The Company also, as a de facto fiduciary as alleged above participated in all aspects of the fiduciary breaches of the other Defendants.  Likewise, Defendants knowingly participated in the breaches of the Communications and Defendants because, as alleged above, they had actual knowledge of the Company's illegal conduct and yet, ignoring their oversight responsibilities (as Directors), permitted the Communications Defendants to breach their duties.

83.     Enabling a Breach.  ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

84.     The Monitoring Defendants failure to monitor the Administration Committee Defendants enabled those committees to breach their duties.

85.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiffs and the Plan's other participants and beneficiaries, lost millions of dollars of retirement savings.

86.     Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), the Co-Fiduciary Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT THREE

### Imprudent Investment In Putnam Funds Claim For Relief Against All Defendants For Violations Of ERISA § 404, For Co-Fiduciary Liability Under ERISA § 405

87.     Plaintiffs incorporate the allegations in the previous paragraphs of the Complaint as if fully set forth herein.

88.     At all relevant time, RadioShack, the 401(k) Administrative Committee and its individual members, the Board of Directors and the Individual Members of the Board of Directors (the "401(k) Plan Fiduciaries") had a duty to select and/or monitor the selection of investments offered by the 401(k) Plan in a prudent manner to exercise their duties solely in the interests of the 401(k) Plan and its Participants, and to defray the expenses incurred by the 401(k) Plan.

89.     The 401(k) Plan Fiduciaries breached their fiduciary duties of prudence and loyalty by selecting and maintaining inappropriate Putnam funds for the 401(k) Plan.  These funds were inappropriate, unsuitable, and imprudent because the improper conduct by Putnam as alleged above the funds' poor performance and the unnecessary highly fees charged by the investment product compared to other, better performing investment alternatives available to a 401(k) Plan of the nature and size of the 401(k) Plan.  Despite the unacceptable performance of the Putnam funds, the 401(k) Plan Fiduciaries caused, and continues to cause, the 401(k) Plan to make or maintain inappropriate investments in the Putnam funds.

90.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the 401(k) Plan and its Participants and beneficiaries have suffered losses or millions of dollars.

91.     Pursuant to ERISA § 502(a)(2) and § 409, Defendants are liable to restore losses to the 401(k) Plan caused by 401(k) Plan Fiduciaries breaches.  WHEREFORE, Plaintiffs pray for relief as set forth below.

## XI.  CAUSATION

92.     The Plan suffered millions of dollars in losses because substantial assets of the Plan were imprudently invested or allowed to be invested by defendants in Company stock during the Class Period, in breach of Defendants' fiduciary duties.

93.     Defendants are liable for the Plan's losses in this case because defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder.  Defendants withheld material, non-public facts from participants, and provided inaccurate and incomplete information to them regarding the true health and ongoing profitability of The Company, and its soundness as an

investment vehicle.  As a consequence, participants did not exercise independent control over their investments in the Company stock, and defendants remain liable under ERISA for losses caused by such investment.

94.    Had defendants properly discharged their fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Company stock, eliminating Company stock as an investment alternative when it became imprudent, and divesting the Plan of Company stock when maintaining such an investment became imprudent, the Plan would have avoided some or all of the losses that it, and indirectly, the participants suffered.

## XII.  REMEDY FOR BREACHES OF FIDUCIARY DUTY

95.    Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the assets of the Plan should not have been invested in Company stock during the Class Period.

96.    As a consequence of defendants' breaches, the Plan suffered significant losses.

97.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary…who breaches any of the…duties imposed upon fiduciaries…to make good to such plan any losses to the plan . . ."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . "

98.    With respect to calculation of the losses to the Plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plan would not have made or maintained its investments in the challenged investment and, instead, prudent fiduciaries would have invested the assets of the Plan in the most profitable alternative investment available

to them. In this way, the remedy restores the Plan's lost value and puts the participants in the position they would have been in if the Plan had been properly administered.

99.  Plaintiffs and the Class and/or the Plan are therefore entitled to relief from the Defendants in the form of: (1) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2) and (3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (3) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs and interests on these amounts, as provided by law; and (5) such other legal or equitable relief as may be just and proper.

100.  Under ERISA, each defendant is jointly and severally liable for the losses suffered by the Plan in this case.

### XIII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for:

A.  Certification of this action as a class action pursuant to Rule 23;

B.  Declaration that the defendants, and each of them, have breached their ERISA fiduciary duties to the participants;

C.  Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

D.  An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan

resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the

Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the

participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.     Imposition a Constructive Trust on any amounts by which any Defendant was

unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

F.     An Order enjoining Defendants, and each of them, from any further violations of

their ERISA fiduciary obligations;

G.     Actual damages in the amount of any losses the Plan suffered, to be allocated

among the participants' individual accounts in proportion to the accounts' losses;

H.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I.     An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the

common fund doctrine; and

J.     An Order for equitable restitution and other appropriate equitable and injunctive

relief against the Defendants.

Dated: May 15, 2008

                              NIX PATTERSON & ROACH, LLP


                              By: /s/Susan Whatley_____

                              Bradley E. Beckworth
                              State Bar No. 24001710
                              Jeffrey Angelovich
                              State Bar No. 00786988
                              Susan Whatley
                              State Bar No. 24047420
                              205 Linda Drive
                              Daingerfield, TX 75638
                              Telephone:    (903) 645-7333
                              Facsimile:    (903) 645-4415

Lee Squitieri, Esq.
SQUITIERI & FEARON LLP
32 East 57th Street, 12th Floor
New York New York 10022
(212) 421-6492

Counsel for Plaintiff Keith Reiders

     -and-

Deborah R. Gross, Esq.
LAW OFFICES OF BERNARD M. GROSS, P.C.
100 Penn Square East, Suite 450
Juniper and Market Streets
Philadelphia, Pennsylvania 19107
(215) 561-3600

Counsel for Plaintiff Alan Goldstein

Thomas E. Bilek, Esq.
THE BILEK LAW FIRM, LLP
1000 Louisiana
Suite 1302
Houston, Texas 77002

Thomas J. McKenna, Esq.
GAINEY & MCKENNA
295 Madison Avenue, 4th Floor
New York, New York 10017
(212) 983-1300

Counsel for Plaintiffs Robert Outlaw
and Robert Maxwell