IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: RADIOSHACK CORP.<br>"ERISA" LITIGATION<br><br>MDL 1875 | §<br>§<br>§<br>§<br>§ Case 4-08-MD-1875-Y<br>§<br>§<br>§<br>§ |

# DEFENDANTS' SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Michael L. Banks*
Brian T. Ortelere*
Jeremy P. Blumenfeld*
Victoria L. Gorokhovich*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
Tel.: 215.963.5000
Fax: 215.963.5001

* Admitted *pro hac vice*

David E. Keltner
State Bar No. 11249500
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel.: 817.332.2500
Fax: 817.878.9280

ATTORNEYS FOR ALL DEFENDANTS

Dated: July 31, 2009

Defendants submit this brief Surreply Memorandum to address a few points raised by Plaintiffs in their Reply Brief for the first time.[1]

### A. Although Plaintiffs Chide Defendants For Ignoring Their "Prohibited Transaction" Claim, There Is No Such Claim In This Case.

Plaintiffs spend much of their reply brief arguing for the first time that Defendants ignore their "prohibited-transaction-related claims." (Pls.' Reply Br. at 7). Plaintiffs' argument is misplaced.

A review of the Cormier Complaint – the only operative complaint in this case (see No. 08-1875, Dkt. 1 (N.D. Tex. May 14, 2007)) – reveals that *there is no prohibited transaction claim in this case*. Indeed, the Cormier Complaint does not even mention alleged "prohibited transactions" or even cite to ERISA Section 406, 29 U.S.C. § 1106, let alone allege a claim based on prohibited transactions regarding Putnam mutual funds. (Id., particularly Count Five).[2] Instead, the Cormier Complaint simply alleges that "the 401(k) Plan Fiduciaries breached their fiduciary duties of *prudence* and *loyalty* by selecting and maintaining inappropriate Putnam funds for the 401(k) Plan." (¶ 167) (emphasis added); see also id. at ¶ 11). (The fiduciary duties of loyalty and prudence are set forth in 29 U.S.C. § 1104(a) and are completely different from the prohibited transaction rules set forth in 29 U.S.C. § 1106.) In opposition to Defendants' motion to dismiss, Cormier again did not even mention any alleged prohibited transactions, or violations of ERISA Section 406, 29 U.S.C. § 1106, regarding Putnam mutual funds. (Cormier

---

[1] Defendants are not addressing each of the arguments raised by Plaintiffs in their reply, but instead rely on their Opposition Brief where Plaintiffs' Reply does not raise new issues.

[2] This is true despite that the Complaint is 48 pages long, contains 169 separately numbered paragraphs, and cites to numerous other provisions of ERISA. It also bears note, as this Court recognized in its March 31, 2008 Order partially granting Defendants' motion to dismiss, that the Maxwell and Outlaw Complaints did allege prohibited transaction claims, but only related to the RadioShack stock investment in the Plan, not Putnam mutual funds. (Dkt. 7). Those prohibited transaction claims were dismissed, (see id.), and are not part of the Cormier Complaint in any event.

Opp'n Br. at 7-8, 30-32, No. 08-1875, Dkt. 48 (N.D. Tex. Oct. 17, 2007). Similarly, in their initial class brief, Plaintiffs described the only claim remaining in the case – that is "the subject of the instant motion" for class certification – as follows:

> Defendants breached their duties of ***loyalty*** and ***prudence*** by selecting Putnam mutual funds that were inappropriate and unsuitable for the Plan due to their poor performance, undisclosed revenue sharing, and/or Putnam's improper conduct for which Putnam paid large civil fines and entered into significant settlements; and in failing to monitor the 401(k) Plan's investment alternatives and replace underperforming funds.

(Pls.' Br. at 5) (emphasis added). This "loyalty and prudence" claim is the only surviving claim in the Cormier Complaint, and the only claim for which Plaintiffs could seek class certification. For the reasons explained in Defendants' Opposition Brief, class certification on that claim is inappropriate.[3]

---

[3] Plaintiffs also try to portray "revenue sharing" as nefarious and illegal. Plaintiffs are wrong. See, e.g., Hecker v. Deere & Co., 556 F.3d 575, 579 (7th Cir. 2009) (describing Fidelity's revenue sharing program in terms identical to those described by Plaintiffs in this case), petition for rehearing denied, --- F.3d ----, 2009 WL 1797441 (7th Cir. June 24, 2009). As the Seventh Circuit explained in Hecker:

> Critical to plaintiffs' case is the proposition that Deere and Fidelity had a duty to disclose the revenue-sharing arrangements that existed between Fidelity Trust and Fidelity Research. . . . Fidelity Research would assess asset-based fees against the various mutual funds, and then *transfer some of the money it collected to Fidelity Trust*.
>
> The Hecker group's case depends on the proposition that there is something wrong, for ERISA purposes, in that [revenue sharing] arrangement. *The district court found, to the contrary, that such an arrangement (assuming at this stage that the Complaint accurately described it) violates no statute or regulation. We agree with the district court.*

Id. at 585 (emphasis added).

**B. Plaintiffs' Request For Disgorgement, And Their Argument That "The Longer The Class Period, The More The Plan (And The Individual Participants) Will Recover," Only Confirms The Precise Conflicts Reflected In The Ross Report.**

Plaintiffs claim in their Reply they are entitled to disgorgement because "[a]ny monies *received* in violation of § 406, must be disgorged to the Plan." (Pls.' Reply Br. at 6) (emphasis added). But putting aside that there is no violation of § 406 (prohibited transactions) alleged in the Cormier Complaint, the only entities that Plaintiffs now contend (in their Reply flowchart) actually received monies in violation of § 406 are *Putnam* entities. (Pls.' Reply Br. at 6). There are no Putnam defendants in this case. Plaintiffs do not claim that any of the actual Defendants in this case received any revenue sharing monies (which monies Plaintiffs apparently contend were Plan assets); thus, there is no disgorgement to be sought from these Defendants in this case.

Moreover, Plaintiffs' unsupported assertion in their Reply that "the longer the class period, the more the Plan (and the individual participants) will recover," (Pls.' Reply Br. at 7), ignores the precise conflicts identified in the Ross Report.[4] Plaintiffs bear the burden of proving

---

[4] Plaintiffs assert in their Reply that the Ross Report should be stricken. This argument is baseless. First, there is no trial date set, or even a hearing date on Plaintiffs' motion for class certification, so Defendants satisfied their obligations under Fed. R. Civ. P. 26(a)(2). Second, the Cormier Complaint does not identify a class period (Cormier Complaint at ¶ 105), and Plaintiffs refused – until they filed their motion – to identify their proposed class period. Ross could not have performed an accurate conflict analysis – responding to Plaintiffs' class motion – until he knew the class period advocated by Plaintiffs. (See Ross Rep. at ¶¶ 11-20). Third, the parties filed a stipulation with the Court specifically contemplating and permitting Defendants to supplement the bases for their opposition to Plaintiffs' class motion (including on adequacy grounds) *after* Plaintiffs filed their class motion "based *upon* their [Defendants'] ongoing investigation and/or *the contents of Plaintiffs' Motion for Class Certification and supporting briefs and evidence*." (Stipulation Filed May 14, 2009, Dkt. 35). This includes Plaintiffs' interrogatory asking Defendants to explain the factual grounds for their position on "adequacy," which the Ross Report addresses. (See RadioShack's Responses to Cormier's First Set of Interrogatories, Interrogatory No. 4 (attached to Plaintiffs' Motion for Class Certification at App. 472); Ross Rep. at ¶¶ 15-20). Defendants incorporated their Opposition Brief into those Interrogatory Responses and therefore timely satisfied their obligations under the specific stipulation agreed to by the parties. See also Oplchenski v. Parfums Givenchy, Inc., 254 F.R.D. 489,

3

the elements of Rule 23 – including the adequacy requirement and associated absence of conflicts – by a preponderance of the evidence. See Oscar Private Equity Investments v. Allegiance Telecom, Inc., 487 F.3d 261, 267-69 (5th Cir. 2007) (preponderance of the evidence standard applies to class certification analysis because "the plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification") (internal citation and quotation omitted). As the Ross Report explains in detail, although a longer class period (with an early alleged breach date) may benefit some Plan participants who invested in some Putnam mutual funds at certain points in time, other participants would benefit by, and would prefer to advocate for, a shorter class period with different alleged breach dates. (Defs.' Opp'n Br. at 12). Further, although Plaintiffs apparently intend to advocate for one "universal" breach date for all of the Putnam mutual funds (Pls.' Reply Br. at 10), the evidence demonstrates that putative class members prefer different alleged breach dates for the different Putnam funds, depending on their own individual investment histories. (Defs' Opp'n Br. at 12). Likewise, determining the "best alternative investment" (Pls.' Reply Br. at 10) by definition depends on the time period over which performance is measured.[5] The "best performing investment" over one period of time (e.g., a longer breach period) may not also be the best performing investment over a shorter period of time. As the Ross Report explains, the selection of this time period will benefit some participants at the expense of others. (Defs' Opp'n Br. at 12-13). Plaintiffs' argument that all putative class members "share the goal of attaining maximum payment to the Plan, regardless of

---

497 n.6 (N.D. Ill. 2008) (denying motion to strike expert report submitted with opposition brief). Plaintiffs' suggestion that this Court should ignore the only evidence in the record about conflicts among class members should be disregarded.

[5] This is not the measure of damages under ERISA in any event. See Leister v. Dovetail, Inc., 546 F.3d 875, 881 (7th Cir. 2008) (specifically rejecting argument that damages should be measured by looking in hindsight to the most profitable investment alternative).

4

the designated [breach] date" was specifically rejected by the Fifth Circuit in <u>Langbecker v. Elec. Data Sys. Corp.</u>, 476 F.3d 299, 315 (5th Cir. 2007) and should be rejected here too.

    **C.    <u>That Plaintiff Goldstein Has Withdrawn His Request To Be A Class Representative Does Not Absolve Counsel Of Their Responsibilities.</u>**

Plaintiffs do not dispute that Goldstein's affidavit – an affidavit that they submitted to this Court – was false and directly contradicted by Goldstein's own *prior* deposition testimony. (Defs' Opp'n Br. at 44-46). Nor do they offer any explanation, although they obviously knew what Goldstein testified to in his deposition before they submitted the affidavit. Instead, they merely withdraw Goldstein as a class representative and assume that this absolves them of any responsibility. It does not. <u>Byes v. Telecheck Recovery Servs., Inc.</u>, 173 F.R.D. 421, 427 (E.D. La. 1997).

|  |  |
|---|---|
| Dated: July 31, 2009 | Respectfully submitted, |
|  | s/ David E. Keltner |
| OF COUNSEL: | David E. Keltner |
|     Michael L. Banks* | State Bar No. 11249500 |
|     Brian T. Ortelere* | Kelly Hart & Hallman LLP |
|     Jeremy P. Blumenfeld* | 201 Main Street, Suite 2500 |
|     Victoria L. Gorokhovich* | Fort Worth, Texas 76102 |
| Morgan, Lewis & Bockius LLP | Tel.: 817.332.2500 |
| 1701 Market Street | Fax: 817.878.9280 |
| Philadelphia, Pennsylvania 19103-2921 |  |
| Tel.: 215.963.5000 | Attorneys for All Defendants |
| Fax: 215.963.5001 |  |

\* Admitted *pro hac vice*

# CERTIFICATE OF SERVICE

I certify that on July 31, 2009, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Thomas R. Ajamie
Ajamie LLP
711 Louisiana
Suite 2150
Houston, TX 77002
713/860-1600
Fax: 713/860-1699
Email: tajamie@ajamie.com

Ronald S. Kravitz
Kim Zeldin
Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP
199 Fremont St.
20th Floor
San Francisco, CA 94105
415/489-7700
Fax: 415/489-7701
Email: rkravitz@linerlaw.com
Email: kzeldin@linerlaw.com

Robert M. Shore
Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor
1100 Glendon Ave
14th Floor
Los Angeles, CA 90024
310/500-3500
Fax: 310/500-3501
Email: rshore@linerlaw.com

Thomas E. Bilek
The Bilek Law Firm LLP
808 Travis
Suite 802
Houston, TX 77002
713/227-7720
Fax: 713/227-9404
Email: tbilek@bileklaw.com

Thomas J. McKenna
Gainey & McKenna
295 Madison Ave
4th Floor
New York, NY 10017
212/983-1300
Fax: 212/983-0383
Email: tjmckenna@gaineyandmckenna.com

Bradley E. Beckworth
Susan R. Whatley
Nix Patterson & Roach LLP
205 Linda Dr
Daingerfield, TX 75638
903/645-7333
Fax: 903/645-4415
Email: bbeckworth@nixlawfirm.com
Email: susanwhatley@nixlawfirm.com

Lee Squitieri
Squitieri & Fearon LLP
32 East 57th Street
12th Floor
New York, NY 10022


/s/ David E. Keltner