**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **IN RE RADIOSHACK CORP. "ERISA" LITIGATION** | **CASE NO. 4-08-MD-1875-Y** |
| **MDL Docket No. 1875** | |

## MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## TABLE OF CONTENTS

**Page No.**

INTRODUCTION ..................................................................................................... 1

I.   BACKGROUND OF THE LITIGATION................................................................ 2

    A.   Plaintiffs' Claims ................................................................................. 2

        1.   Putnam Claims ............................................................................. 2

        2.   Company Stock Claims................................................................. 4

    B.   Procedural History ................................................................................. 4

        1.   The Motion to Dismiss.................................................................. 4

        2.   Motion for Class Certification ..................................................... 5

        3.   Fact Development ......................................................................... 5

II.  SUMMARY OF SETTLEMENT TERMS............................................................. 6

III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
    APPROVAL ......................................................................................................... 7

    A.   The Standard for Preliminary Approval of Settlements ......................... 7

    B.   The Settlement is "Within The Range of Possible
        Approval"............................................................................................... 8

        1.   Existence of Fraud or Collusion Behind the
            Settlement ................................................................................... 10

        2.   Complexity, Expense, and Likely Duration of the
            Litigation................................................................................... 11

        3.   Stage of the Proceedings and the Amount of
            Discovery Completed................................................................. 12

        4.   Probability of the Plaintiffs' Success on the Merits.................... 13

        5.   Range of Possible Recovery ...................................................... 14

        6.   Opinions of the Class Counsel, Class
            Representatives, and the Absent Class Members ...................... 15

IV.  THE COURT SHOULD CERTIFY A SETTLEMENT CLASS ...................... 16

    A.   All the Requirements of Rule 23(a) Are Met........................................ 17

        1.   Numerosity................................................................................. 17

        2.   Commonality.............................................................................. 17

## TABLE OF CONTENTS

**Page No.**

3.   Typicality .................................................................................................. 18

4.   Adequacy ................................................................................................. 19

B.   The Settlement Class Should Be Certified under Rule
23(b)(1) .................................................................................................... 20

1.   Certification Is Warranted under Rule 23(b)(1)(A) .................................. 22

2.   Certification Is Warranted under Rule 23(b)(1)(B) .................................. 22

CONCLUSION ........................................................................................................... 23

**TABLE OF AUTHORITIES**

**Page No.**

**CASES**

*Amara v. Cigna Corp.,*
2002 WL 31993224 (D. Conn. Dec. 20, 2002)................................................16

*In re AOL Time Warner ERISA Litig.,*
2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006)...........................................18, 22

*Armstrong v. Bd. of Sch. Directors,*
616 F.2d 305 (7th Cir. 1980) ........................................................................7

*Ayers v. Thompson,*
358 F.3d 359 (5th Cir. 2004), *cert. denied*, 543 U.S. 951 (2004).......................9

*Babcock v. Computer Assocs. Int'l, Inc.,*
212 F.R.D. 126 (E.D.N.Y. 2003) ....................................................................16

*Beesley v. Int'l Paper Co.,*
2008 WL 4450319 (S.D. Ill. Sept. 30, 2008)..................................................16

*Bublitz v. E.I. du Pont de Nemours and Co.,*
202 F.R.D. 251 (S.D. Iowa 2001) ..................................................................16

*In re CMS Energy ERISA Litig.,*
225 F.R.D. 539 (E.D. Mich. 2004) .................................................................16

*Clauser v. Newell Rubbermaid, Inc.,*
2000 WL 1053395 (E.D.Pa. July 31, 2000).....................................................16

*In re Compact Disc MAP Litig.,*
216 F.R.D. 197 (D.Me. 2003).........................................................................10

*In re Corrugated Container Antitrust Litig.,*
643 F.2d 195 (5th Cir. 1981) .........................................................................12

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977) ....................................................8, 12, 15, 16

*Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)..........................................................................15

*DiFelice v. U.S. Airways, Inc.,*
235 F.R.D. 70 (E.D.Va. 2006) ...........................................................16, 19, 21

**TABLE OF AUTHORITIES**

*Felzen v. Andreas,*
    134 F.3d 873 (7th Cir. 1988) ............................................................................7

*Forbush v. J.C. Penny Co.,*
    994 F.2d 1101 (5th Cir. 1993) ......................................................................17

*In re Gen. Motors Trusts,*
    55 F.3d 768 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995)........................................14

*George v. Kraft Foods Global, Inc.,*
    251 F.R.D. 338 (N.D. Ill. 2008)........................................................................16

*Goldberger v. Integrated Resources, Inc.,*
    209 F.3d 43 (2d Cir. 2000)..............................................................................15

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................16, 21

*Hecker v. Deere & Co.,*
    556 F.3d 575 (7th Cir. 2009), *cert. denied*, 130 S.Ct. 1141 (2010)....................................13

*Henry v. Cash Today, Inc.,*
    199 F.R.D. 566 (N.D. Tex. 2000) ....................................................................19

*In re Ikon Office Solutions, Inc.,*
    191 F.R.D. 457 (E.D.Pa. 2000)........................................................................16

*James v. City of Dallas,*
    254 F.3d 551 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002).......................17, 18, 19

*Kane v. United Indep. Union Welfare Fund,*
    1998 WL 78985 (E.D.Pa. Feb. 24, 1998) ...............................................16, 21

*Koch v. Dwyer,*
    2001 WL 289972 (S.D.N.Y. March 23, 2001) ...............................................16

*Kolar v. Rite Aid Corp.,*
    2003 WL 1257272 (E.D.Pa. Mar. 11, 2003)...............................................16, 20

*LaFlamme v. Carpenters Local # 370 Pension Plan,*
    212 F.R.D. 448 (N.D.N.Y. 2003) ....................................................................16

*Langbecker v. Elec. Data Sys. Corp.,*
    476 F.3d 299 (5th Cir. 2007) ..........................................................................13

# TABLE OF AUTHORITIES

**Page No.**

*Levell v. Monsanto Research Corp.*,
　191 F.R.D. 543 (S.D. Ohio 2000) ....................................................................................12

*Lightbourn v. County of El Paso*,
　118 F.3d 421 (5th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998)...................................17

*Linney v. Cellular Alaska Partnership*,
　151 F.3d 1234 (9th Cir. 1998) .......................................................................................12

*Lively v. Dynergy, Inc.*,
　2007 U.S. Dist. LEXIS 14794 (S.D. Ill. Mar. 2, 2007) ....................................................21

*In Re MicroStrategy, Inc., Sec. Litig.*,
　148 F. Supp. 2d 654 (E.D.Va. 2001) .............................................................................12

*Mullen v. Treasure Chest Casino, LLC*,
　186 F.3d 620 (5th Cir. 1999), *cert. denied*, 528 U.S. 1159 (2000)...................................18

*New England Carpenters Health Benefits Fund. v. First Databank, Inc.*,
　602 F. Supp. 2d 277 (D. Mass. 2009), *aff'd*, 582 F.3d 30 (1st Cir. 2009) .......................10

*Newby v. Enron*,
　394 F.3d 296 (5th Cir. 2004) ...........................................................................................9

*Ogden v. Americredit Corp.*,
　225 F.R.D. 529 (N.D. Tex. 2005) ...................................................................................16

*Parker v. Anderson*,
　667 F.2d 1204 (5th Cir. 1982), *cert. denied*, 459 U.S. 828 (1982)................................8, 9

*Pederson v. La. State Univ.*,
　213 F.3d 858 (5th Cir. 2000) .........................................................................................17

*In re Polaroid ERISA Litigation*,
　240 F.R.D. at 65 (S.D.N.Y. 2006) ..................................................................................21

*Rankin v. Rots*,
　220 F.R.D. 511 (E.D. Mich. 2004) .................................................................................16

*Reed v. Gen. Motors Corp.*,
　703 F.2d 170 (5th Cir. 1983) ....................................................................................8, 9, 15

**TABLE OF AUTHORITIES**

**Page No.**

*Rogers v. Baxter Int'l Inc.*,
 2006 WL 794734 (N.D. Ill. Mar. 22, 2006)......................................................................16

*In re Schering-Plough Corp. ERISA Litig.*,
 2008 U.S. Dist. LEXIS 89718 (D.N.J. Jan. 31, 2008) ........................................................21

*In re Shell Oil Refinery*,
 155 F.R.D. 552 (E.D.La. 1993).........................................................................................14

*Shirk v. Fifth-Third*,
 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) .................................................................16

*Smith v. AON Corp.*,
 238 F.R.D. 609 (N.D. Ill. 2006).........................................................................................21

*Smith v. Crystian*,
 91 Fed. Appx. 952 (5th Cir. 2004), *cert. denied*, 543 U.S. 1089 (2005) ............................8

*Spano v. Boeing Co.*,
 2008 WL 4449516 (S.D. Ill. Sept. 29, 2008) ....................................................................16

*Stoffels v. SBC Communs., Inc.*,
 238 F.R.D. 446 (W.D. Tex. 2006) .....................................................................................20

*In re Syncor ERISA Litig.*,
 227 F.R.D. 338 (C.D. Cal. 2005).......................................................................................16

*Thomas v. SmithKline Beecham Corp.*,
 201 F.R.D. 386 (E.D.Pa. 2001).........................................................................................16

*Turner v. Murphy Oil USA*,
 472 F. Supp. 2d 830 (E.D.La. 2007)......................................................................8, 9, 11, 15

*Tussey v. ABB, Inc.*,
 2007 WL 4289694 (W.D.Mo. Dec. 3, 2007) .....................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)................................................................................................10

*White v. Sundstrand Corp.*,
 1999 WL 787455 (N.D. Ill. Sept. 30, 1999) .....................................................................16

*In re Williams Co. ERISA Litig.*,
 231 F.R.D. 416 (N.D. Okla. 2005)................................................................................16, 21

# TABLE OF AUTHORITIES

## STATUTES

ERISA § 404(c), 29 U.S.C § 1104(c) ....................................................................2, 19

ERISA § 406, 29 U.S.C. § 1106 .........................................................................1, 18

ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).............................................................3

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ...............................................16, 19, 21

Federal Rule of Civil Procedure 23(a) .............................................................17, 19

Federal Rule of Civil Procedure Rule 23(a)(2) ........................................................17

Federal Rule of Civil Procedure Rule 23(a)(3)........................................................18

Federal Rule of Civil Procedure Rule 23(a)(4)........................................................19

Federal Rule of Civil Procedure Rule 23(b) ......................................................16, 20

Federal Rule of Civil Procedure Rule 23(b)(1).......................................1, 16, 20, 21, 22

Federal Rule of Civil Procedure 23(e) .............................................................1, 7, 9

Federal Rule of Civil Procedure Rule 26 ................................................................5

## MISCELLANEOUS

*Manual for Complex Litigation* § 1.46 at 53-55 (West 1977) .........................................7

*Manual for Complex Litigation* § 30.41 at 237 (3d. Ed. 1995) .....................................8

Plaintiffs Jeffrey Cormier and Robert Outlaw ("Plaintiffs"), by and through their attorneys of record, respectfully submit this Memorandum of Points and Authorities in Support of Preliminary Approval of Settlement.

## INTRODUCTION

After over three years of litigation and a lengthy mediation before the Honorable Joseph H. Hart (retired), the parties reached a fair, reasonable, and adequate settlement. Accordingly, the parties seek preliminary approval of the settlement under Federal Rule of Civil Procedure 23(e), and ask the Court to certify a settlement class pursuant to Federal Rule of Civil Procedure 23(b)(1).

Plaintiffs allege that Defendants caused substantial losses to the RadioShack 401(k) Plan ("401(k) Plan") and Supplemental Plan (collectively, the "Plans") by offering RadioShack stock when they knew that the stock prices were artificially inflated and additional losses to the 401(k) Plan by selecting expensive and under performing Putnam funds as the investment options for the 401(k) Plan participants.  Plaintiffs contend that the Putnam funds selected by Defendants made "revenue sharing" payments to Putnam in violation of ERISA § 406, 29 U.S.C. § 1106, that such investments were imprudent because Putnam charged excessive fees for poorly performing funds, and that Defendants failed to follow the terms of the 401(k) Plan, which required Defendants to pay the costs (e.g., administrative expenses) of maintaining the 401(k) Plan's investment options.

On March 31, 2008, the Court dismissed Plaintiffs' RadioShack stock claims with prejudice and without leave to amend.  Defendants continue to deny liability as to the remaining Putnam claims and have also asserted affirmative defenses based upon ERISA

1

§ 404(c), 29 U.S.C. § 1104(c), the statute of limitations, and releases purportedly signed by putative class members.

After a thorough investigation, class discovery, and expert consultation, the parties participated in a lengthy mediation process that culminated in a settlement of all claims for $2.4 million in cash and substantial injunctive relief to the Plans, including an Independent Fiduciary, training for current and future fiduciaries, and the use of an independent, outside investment advisor for the 401(k) Plan. In light of the claims and defenses and the procedural posture of this litigation, the proposed settlement terms are fair, reasonable and adequate, and should be approved.

## I.   BACKGROUND OF THE LITIGATION

### A.   Plaintiffs' Claims

Plaintiffs are participants in the Plans. Appendix, pp. 87 and 110-117 [Exhibit 8 to the Kravitz Declaration (Complaint at ¶¶ 16, 17, 105-118)]. Plaintiffs alleged that Defendants are the Plans' fiduciaries, who *inter alia*, selected the investment options for the 401(k) Plan from which the Plan participants could choose. Appendix, pp. 87-95 [Exhibit 8 to the Kravitz Declaration (Complaint at ¶¶ 18-36)]. During the relevant time period, Defendants offered Company stock to the Supplemental Plan and Putnam Funds and Company stock to the 401(k) Plan participants. Appendix, p. 85 [Exhibit 8 to the Kravitz Declaration (Complaint at ¶¶ 2-4)]. Plaintiffs contend that these options were not prudent. Appendix, pp. 85-86 [Exhibit 8 to the Kravitz Declaration (Complaint at ¶¶ 6-12.)].

### 1.   Putnam Claims

Plaintiffs contend that choosing Putnam as a service provider was imprudent because each mutual fund offered by Putnam paid Putnam a small percentage of the

2

money that the 401(k) Plan invested in exchange for Putnam offering these funds to the 401(k) Plan. Plaintiffs contend that this process, known as "revenue sharing," violated ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), which proscribes certain prohibited transactions because they may create a conflict of interest.[1] Plaintiffs allege that Defendants breached their fiduciary duties by causing the 401(k) Plan to engage in these prohibited transactions. Appendix, p. 86 [Exhibit 8 to the Kravitz Declaration (Complaint at ¶ 11)].

Plaintiffs further contend that in addition to violating ERISA, Defendants' selection of Putnam as a service provider also breached the terms of the 401(k) Plan, which Plaintiffs contend required that RadioShack pay all Trustee's fees and expenses incurred in the administration of the Plan. Plaintiffs believe that the reason Defendants offered and continued to offer Putnam funds was that Putnam did not charge RadioShack any fees for maintaining the 401(k) Plan's investment options. (*Id.*)

Finally, Plaintiffs allege that Putnam funds were an imprudent investment option because the Putnam funds charged excessive fees, and did not perform as well as other available investment options – in part because Putnam had committed widely-publicized criminal violations that resulted in Putnam paying millions of dollars in regulatory fines. Appendix, pp. 86 and 105-106 [Exhibit 8 to the Kravitz Declaration (Complaint at ¶¶ 11, 90)].

---

[1] ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), provides: "A fiduciary with respect to a plan shall not receive any consideration for his own personal account [**revenue sharing**] from any party dealing with such plan [**Putnam mutual funds**] in connection with a transaction involving the assets of the plan [**Plan funds**]." 29 U.S.C. § 1106(b)(3). Plaintiffs allege that Defendants breached their fiduciary duties to the Plan by allowing Putnam, a fiduciary, to receive consideration for its own account from a party dealing with the Plan, Putnam mutual funds, in connection with a transaction involving plan funds.

3

### 2.    Company Stock Claims

Plaintiffs allege that Defendants should not have offered Company stock to the Plans' participants because Defendants knew that the value of such stock was artificially inflated. Appendix, pp. 85-86 [Exhibit 8 to the Kravitz Declaration (Complaint at ¶¶ 7-10)]. As alleged in the Complaint, Defendants made numerous laudatory statements and projections about RadioShack's financial health, while knowing that they had to write down millions of dollars in worthless assets. Appendix pp. 100-104 [Exhibit 8 to the Kravitz Declaration (Complaint at ¶¶ 63-84)]. Plaintiffs further allege that, once the write-down occurred, a massive stock drop ensued from which the stock has not recovered. (*Id.*)

### B.    Procedural History

Mr. Cormier filed the Complaint on May 14, 2007. In approximately July 2007, Defendants changed some of the investment funds available through the 401(k) Plan to share classes with lower expense ratios. Appendix, p. 35 [Exhibit 2 to the Kravitz Declaration (2007 11-K, p. 8)]. These changes lowered the amount of fees assessed on the fund returns. (*Id.*) Defendants also removed certain Putnam funds and replaced them with non-Putnam funds. (*Id.*) In about July 2008, Defendants changed the record keeper for the Plan to Wachovia Retirement Services and changed the trustee to Wachovia Bank, N.A. Appendix, p. 49 [Exhibit 3 to the Kravitz Declaration (2008 11-K, p. 8)].

### 1.    The Motion to Dismiss

Four separate groups of plaintiffs, each represented by independent counsel, filed separate actions against Defendants. Defendants moved to dismiss each of the complaints. The four actions were centralized by the Judicial Panel on Multidistrict Litigation on October 23, 2007. The four actions were consolidated on July 22, 2008.

4

The Court granted, in part, Defendants' motions to dismiss the actions on March 31, 2008 and April 7, 2008, dismissing all claims relating to investment in Company stock. (See Dkt. No. 7 at 10-15.)[2]  The Court denied the motion to dismiss the Putnam Claims. The actions were consolidated for all purposes on July 22, 2008, and the complaint filed by Mr. Cormier was deemed to be the operative complaint.

### 2.    Motion for Class Certification

The issue of class certification has been fully briefed and submitted to the Court. (Dkt. Nos. 36, 43, 49, 57.) The parties have requested that the resolution of the class certification be continued in anticipation of settlement. (Dkt. No. 59. [Order setting deadline for submission of motion for prelim approval]) On November 23, 2009, the Court dismissed the class certification motion as moot "without prejudice to the filing of a similar motion as necessary to effectuate the parties' settlement agreement." (Dkt. No. 60.)

### 3.    Fact Development

Aside from initial disclosures pursuant to Rule 26, discovery in this action has been limited to class-certification-related issues pursuant to the Court's Scheduling Order, dated January 9, 2009 (Dkt. No. 22) and the exchange of documents and information in connection with the settlement. Although no merits discovery has occurred, Plaintiffs conducted extensive case investigation prior to and during this litigation. One of the Defendants, RadioShack's former Controller and CFO David Johnson, was deposed, and the named Plaintiffs were also deposed. In addition, during the negotiation of the settlement agreement terms, RadioShack produced, among other

---

[2] The now operative complaint in this action is the one filed by Mr. Cormier. It was filed in Case No. 4:07-cv-00285 (the "Pre-consolidation case"). Unless cited to as part of the "Pre-consolidation case," all cites herein are to the active docket.

things, key Administrative and Investment Committee minutes. Appendix, pp. 4-5 [Kravitz Decl. ¶ 16].

Based on the information that Plaintiffs obtained through investigation and discovery, Plaintiffs' expert prepared a damages analysis that Plaintiffs shared with opposing counsel during mediation. Through discovery, investigation, the information informally produced by RadioShack during the settlement negotiation process, and the expert analysis, Plaintiffs have a comprehensive view of the strengths and weaknesses of their claims in this litigation, and the potential upside if this action were to proceed through trial.

## II.    SUMMARY OF SETTLEMENT TERMS

The primary terms of the settlement include:

1.    RadioShack will pay $2.4 million to the Class Members who were participants in the Plans from January 1, 1996 through September 30, 2009. This settlement fund will be placed into escrow and will earn interest for the benefit of the settlement class within thirty (30) business days of the date the Court grants the motion for preliminary approval of the settlement.

2.    RadioShack will pay the first $75,000 of fees and costs associated with the review of the settlement performed by an Independent Fiduciary.[3]

3.    RadioShack will provide training for the current fiduciaries and any fiduciaries newly named over the next two years. Plaintiffs estimate the value of the training to be between $50,000 and $75,000.

---

[3] The independent fiduciary reviewed the Settlement Stipulation and the Plan of Allocation and made suggested changes, which the parties agreed to incorporate into the documents either as proposed or as modified after further discussions. Appendix, p. 6 [Kravitz Decl. ¶ 20].

6

4.      RadioShack will commit to using an independent, outside, investment

advisor for the plan for at least the next two years.  Plaintiffs estimate the value of the

outside advisor to be between $175,000 and $225,000.

5.      Class Notice will be paid for out of the settlement fund.  RadioShack will

provide the census data to the settlement administrator.

Appendix, p. 144 [Exhibit 11 to the Kravitz Declaration].

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.     The Standard for Preliminary Approval of Settlements

The instant motion seeks preliminary approval of a settlement and class notice.

Courts employ the following procedure for approval of a class settlement pursuant to

Rule 23(e):

> District Court review of a class action settlement proposal is a two-step
> process.  The first step is a preliminary, pre-notification hearing to
> determine whether the proposed settlement is "within the range of possible
> approval."  This hearing is not a fairness hearing; its purpose, rather, is to
> ascertain whether there is any reason to notify the class members of the
> proposed settlement and to proceed with a fairness hearing.  *Manual for
> Complex Litigation* § 1.46 at 53-55 (West 1977).  If the district court finds
> a settlement proposal "within the range of possible approval," it then
> proceeds to the second step in the review process, the fairness hearing.
> Class members are notified of the proposed settlement and of the fairness
> hearing at which they and all interested parties have an opportunity to be
> heard.  The goal of the fairness hearing is to adduce all information
> necessary to enable the judge intelligently to rule on whether the proposed
> settlement is "fair, reasonable, and adequate."  *Manual for Complex
> Litigation* at 57.  On the basis of all information available to him, the trial
> judge must decide whether or not to approve the proposed settlement.

*Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980) (footnote omitted),

overruled on other grounds by *Felzen v. Andreas*, 134 F.3d. 873 (7th Cir. 1988).

7

At this point, the Court need only take the first step in the process and grant preliminary approval of the proposed Settlement.  As the Manual for Complex Litigation explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of the formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation* § 30.41 at 237 (3d. Ed. 1995).[4]

In reviewing the proposed settlement, the Court "must not try the case" while considering the settlement, as this would introduce the "delay and expense" that the settlement seeks to avoid.  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Moreover, there is a "'strong judicial policy favoring resolution of disputes through settlement' and that a presumption is made in favor of the settlement's fairness, absent contrary evidence."  *Turner v. Murphy Oil USA*, 472 F. Supp. 2d 830, 843 (E.D.La. 2007) (citing *Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004), *cert. denied*, 543 U.S. 1089 (2005), quoting *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982), *cert. denied*, 459 U.S. 828 (1982), and *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).)

**B.     The Settlement is "Within The Range of Possible Approval"**

The proposed settlement satisfies the standard for preliminary approval, because it confers a substantial benefit on the class and is well within the range of possible

---

[4] At the final settlement hearing, the Court will have before it more extensive papers submitted in support of the proposed settlement and will be asked to make a final determination regarding whether the settlement is fair, reasonable, and adequate under all the circumstances of the litigation.

8

approval.  The settlement is beneficial to the class, providing that RadioShack pay:  the

sum of $2.4 million in cash plus accrued interest for distribution to the Class Members;

that RadioShack may obtain an independent fiduciary to evaluate the reasonableness of

the settlement and pay the first $75,000 of the fees and costs of the independent fiduciary,

that RadioShack provide training to current fiduciaries and any fiduciaries named over

the next two years; and that RadioShack commit to using an independent investment

advisor for the plan for at least the next two years.  Thus, the value of the total settlement

is between $2,625,000 and $2,700,000.  Appendix, p. 3 [Kravitz Decl. ¶ 10.]

Moreover, reference to the factors that courts consider in granting final approval

to settlement shows that the proposed settlement is well within the range of possible

approval.  Rule 23(e)(2) establishes that a settlement must be fair, reasonable and

adequate.  *Turner*, 472 F. Supp. 2d at 842; *Newby v. Enron*, 394 F.3d 296, 300-01 (5th

Cir. 2004); *Parker*, 667 F.2d at 1209.  The Fifth Circuit has consistently applied a six

factor test for determining the fairness, reasonableness, and adequacy of a proposed class

action settlement, considering:

> (1) the existence of fraud or collusion behind the settlement; (2) the
> complexity, expense and likely duration of the litigation; (3) the stage of
> the proceedings and the amount of discovery completed; (4) the
> probability of the plaintiffs' success on the merits; (5) the range of
> possible recovery; and (6) the opinion of the class counsel, class
> representatives, and the absent class members.

*Ayers v. Thompson*, 358 F.3d 359, 369 (5th Cir. 2004), *cert. denied*, 543 U.S. 951 (2004);

*Reed*, 703 F.2d at 172; *Parker*, 667 F.2d at 1209.  Each of those factors favors

preliminary approval here.

9

1.    **Existence of Fraud or Collusion Behind the Settlement**

There was no collusion or fraud behind the settlement here. To the contrary, this proposed settlement was reached by experienced attorneys following substantial investigation and discovery, expert consultation, a lengthy and adversarial mediation and arms-length negotiation process, and an evaluation by an independent fiduciary. This factor thus weighs in favor of preliminary approval.

There is a "presumption of fairness" for settlements that are the result of "arm's-length negotiations" following "meaningful" discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-117 (2d Cir. 2005). *See, e.g, In re Compact Disc MAP Litig.*, 216 F.R.D. 197, 207 (D.Me. 2003) ("The caselaw tells me that a settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair"); *New England Carpenters Health Benefits Fund. v. First Databank, Inc.*, 602 F. Supp. 2d 277, 280 (D. Mass. 2009), *aff'd*, 582 F.3d 30 (1st Cir. 2009).

Here, this case settled following extensive negotiation and mediation. Both parties were represented by experienced attorneys able to leverage their knowledge of this type of litigation to achieve a settlement beneficial to their clients.[5] The parties took

---

[5] Plaintiffs' counsel, Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP and attorney Ronald S. Kravitz, have represented clients in connection with numerous ERISA class actions involving allegations of fiduciary breach. Appendix, pp. 54-60 [Exhibit 4 the Kravitz Declaration]. Ronald Kravitz is a member of the American Bar Association's Section of Labor and Employment Law, was co-chair of the Section's Civil Procedure sub-committee, and is currently co-chair of the Section's Fiduciary sub-committee. In addition, Mr. Kravitz is a Chapter Editor for *Employee Benefits Law*, a treatise published by the Labor and Employment Law Section. Appendix pp. 62-65 [Exhibit 5 to the Kravitz Declaration].

Further, Gainey & McKenna and Squiteri & Fearon have significant experience in ERISA litigation and complex litigation generally, and ERISA company stock litigation specifically. Gainey & McKenna and Squiteri & Fearon have taken a leading role among law firms in pursuing employee lawsuits and ERISA violations on behalf of participants

part in an all-day, arms-length mediation before the Honorable Joseph H. Hart (retired).

Even then, the parties failed to reach any agreement, and it was only after several

additional days of continued negotiation through Judge Hart that this proposed settlement

was reached. Appendix, p. 4 [Kravitz Decl. ¶ 13]. This contentious, and initially

unsuccessful, history countermands a finding of collusion or fraud and shows that the

settlement negotiations took place at arms-length.

### 2.   Complexity, Expense, and Likely Duration of the Litigation

A settlement would save significant expenditures of the parties' and the Court's

resources on a complex case that otherwise would not result in the Class Members

receiving any relief to which they may be entitled for many years. Accordingly, this

factor also weighs in favor of the preliminary approval. *See Turner*, 472 F. Supp. 2d at

846 ("[c]ompensation now rather than later is an important step" in allowing class

members to rebuild).

This case has the potential to impose enormous costs on all of the parties, while

delaying payments of any monetary recovery and injunctive relief for many years. The

proposed class consists of those who invested in RadioShack stock in the Plans and in

Putnam funds through the 401(k) Plan, encompassing over 13,000 potential class

members. Appendix, p. 9 [Exhibit 1 to the Kravitz Declaration]. Litigating this action on

the merits would require years of depositions, document review, and substantial third-

party discovery. This would be followed by a trial that would last at least several weeks.

---

and beneficiaries in employer-sponsored benefit plans and have obtained substantial
recoveries in that regard. Appendix, pp. 66-83 [Exhibits 6 and 7 to the Kravitz
Declaration].

To defend the action, Defendants retained Morgan, Lewis & Bockius, a national
law firm with extensive ERISA experience, which involved attorneys from its offices in
Philadelphia. Appendix, p. 135 [Exhibit 9 to the Kravitz Declaration.]

11

Appendix, p. 4 [Kravitz Decl. ¶ 14]. Under the circumstances here, an appeal likely would follow regardless of the outcome of the trial, significantly delaying any relief and thereby compounding the economic hardships faced by the Plaintiffs. *See In Re MicroStrategy, Inc., Sec. Litig.*, 148 F. Supp. 2d 654, 667 (E.D.Va. 2001) (citing expense, delay, and risk of adverse ruling on appeal as issues to be considered when evaluating this factor); Appendix, p. 4 [Kravitz Decl. ¶ 15].

Moreover, if Plaintiffs prevailed in their appeal of the Company Stock Claims, this would result in more protracted litigation and further delay the class members' receipt of any benefits from this litigation. Accordingly, this factor, too, favors granting preliminary approval of the proposed settlement.

### 3.     Stage of the Proceedings and the Amount of Discovery Completed

The parties have sufficient information to evaluate the strengths and weakness of this case, and the potential range of outcomes. This factor also favors preliminary approval.

For a settlement to be "fair, reasonable, and adequate," the parties must have sufficient information to assess the strengths, weaknesses, and potential outcomes of the litigation; formal discovery is not necessary. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *Cotton*, 559 F.2d at 1332; *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239-40 (9th Cir. 1998); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556-57 (S.D. Ohio 2000). What is required is that the parties obtain the "quantum of information" necessary to achieve settlement. *Cotton*, 559 F.2d at 1332. Where counsel are experienced attorneys familiar with the type of

12

litigation at hand and have obtained sufficient information through informal processes, they are not "groping in the darkness" and settlement may be approved. *Id.*

This case was litigated for over three years before the settlement was reached. Appendix, pp. 4-5 [Kravitz Decl. ¶ 16]. During that time, investigation and formal[6] and informal discovery provided substantial information relating to the central issues of this case, including Defendants' cognizance of their fiduciary duties, whether Putnam engaged in "revenue sharing," whether Defendants breached their fiduciary duties to the 401(k) Plan by retaining Putnam as a service provider, and whether Putnam's funds underperformed compared to available alternatives and whether the Defendants selected prudent investments to replace the Putnam funds.[7] *Id.* Thus, there is sufficient information available to evaluate the strengths and weaknesses of the case.

### 4.    Probability of the Plaintiffs' Success on the Merits

Although the parties dispute the strengths of Plaintiffs' claims, undeniable risks exist for both sides. For example, Plaintiffs face a risk that the Court would not certify a class. *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007) (vacating class certification in ERISA case). There is also the potential for Defendants to raise legal arguments and affirmative defenses based on ERISA section 404(c), releases, or the statute of limitations, which could cause Plaintiffs to lose the case outright. *See EDS*, 476 F.3d at 321 (dicta); *see also Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), *cert.*

---

[6] Although formal discovery was limited to issues related to class certification, several of the topics covered during the limited discovery in this case also touched on the merits of the case. Also, during the negotiation of the settlement agreement terms, RadioShack produced minutes of the Administrative and Investment Committees and related reports by the Plan's outside consultants concerning the Plan's investments. Appendix, pp. 4-5 [Kravitz Decl. ¶ 16].

[7] E.g., Appendix, pp. 136-143 [Exhibit 10 the Kravitz Declaration (Deposition testimony of David Johnson (April 14, 2009) at 19:2-20:15, 22:6-23:7, 35:3-36:10.)]

0093014/001/ 49384v02

*denied*, 130 S.Ct. 1141 (2010), (dismissing revenue-sharing claims). Conversely, should

Defendants' defenses fail, Defendants face in excess of $20 million in liability for the

Putnam claims.

If a class were certified and Plaintiffs' remaining claims proceeded to trial, both

sides would have to contend with the vagaries of a trial and the potential for post-trial

appeals. As a result, although Plaintiffs remain confident that they would prevail on the

merits, they recognize the existence of substantial risks of either losing the case or having

Defendants significantly narrow the case if forced to litigate this case further.

These are the exact types of considerations that drive settlements. As one court

explained:

> [t]he Court should consider the vagaries of litigation and compare
> the significance of immediate recovery by way of the compromise
> to the mere possibility of relief in the future, after protracted and
> expensive litigation. In this respect, '[i]t has been held proper to
> take the bird in the hand instead of a prospective flock in the bush.'

*In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D.La. 1993) (citations omitted). These

considerations are equally compelling under the facts and circumstances of this case.

Accordingly, this factor favors preliminary approval.

### 5. Range of Possible Recovery

In applying this test of reasonableness, "the present value of the damages

plaintiffs would likely recovery if successful, appropriately discounted for the risk of not

prevailing should be compared with the amount of the proposed settlement." *In re Gen.*

*Motors Trusts*, 55 F.3d 768, 806 (3d Cir. 1995) (citation omitted), *cert. denied*, 516 U.S.

824 (1995). It is important to note that "compromise is the essence of a settlement," and

that the proponents of the settlement should not be required to "justify each term of

14

settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330 (citations omitted). Moreover, "there is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion ...." *Turner*, 472 F. Supp. 2d at 849 (citation omitted).

Here, Plaintiffs' expert estimated Plaintiffs' surviving claims at approximately $20 million plus interest. In this settlement, the class will receive a $2.4 million cash award, plus interest, and injunctive relief valued at $225,000 to $300,000. Appendix, p. 4 [Kravitz Decl. ¶ 11]. Therefore, although Plaintiffs' estimated losses associated with the surviving claims are approximately $20 million plus interest, the risks associated with taking those surviving claims to trial renders the overall settlement amount of $2,625,000 to $2,700,000 million -- a very reasonable and expeditious result under the circumstances of this case. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974), overruled on other grounds by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d. 43 (2d Cir. 2000), ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not ... mean that the proposed settlement is grossly inadequate and should be disapproved.").

**6.    Opinions of the Class Counsel, Class Representatives, and the Absent Class Members**

Class counsel and the class representatives are in agreement that the proposed settlement is fair and equitable to the class. *See* Appendix, p. 5 [Kravitz Decl. ¶ 18]. *See Reed*, 703 F.2d at 175 ("[T]he value of the assessment of able counsel negotiating at

15

arm's length cannot be gainsaid. Lawyers know their strengths and they know where the

bones are buried."); *Cotton*, 559 F.2d at 1330 (same).[8]

Because of the preliminary stage of the settlement approval process, the opinions

of the absent class members cannot yet be evaluated. This factor therefore favors

preliminary approval.

## IV.   THE COURT SHOULD CERTIFY A SETTLEMENT CLASS

Plaintiffs claims arise under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). Because

they are representative claims on behalf of the Plans, rather than on behalf of any

individual plan participant, such claims are routinely certified for class treatment under

Rule 23(b)(1).[9]   Now that Defendants have waived their defenses for purposes of this

---

[8] The ERISA independent fiduciary engaged in this case, Fiduciary Counselors Inc., reviewed the Settlement Stipulation and the Plan of Allocation and made suggested changes, which the parties agreed to incorporate into the documents either as proposed or as modified after further discussions. Appendix, p. 6 [Kravitz Decl. ¶ 20].

[9] *See, e.g., Shirk v. Fifth-Third*, 2008 WL 4425535, at *2 (S.D. Ohio Sept. 30, 2008); *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338 (N.D. Ill. 2008); *Spano v. Boeing Co.*, 2008 WL 4449516, at *6 (S.D. Ill. Sept. 29, 2008); *Beesley v. Int'l Paper Co.*, 2008 WL 4450319 (S.D. Ill. Sept. 30, 2008); *Rogers v. Baxter Int'l Inc.*, 2006 WL 794734, at *5 (N.D.Ill. Mar. 22, 2006); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D.Va. 2006); *In re Williams Co. ERISA Litig.*, 231 F.R.D. 416 (N.D. Okla. 2005); *In re Syncor ERISA Litig.*, 227 F.R.D. 338 (C.D. Cal. 2005); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004); *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004); *LaFlamme v. Carpenters Local # 370 Pension Plan*, 212 F.R.D. 448 (N.D.N.Y. 2003); *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126 (E.D.N.Y. 2003); *Bublitz v. E.I. du Pont de Nemours and Co.*, 202 F.R.D. 251 (S.D. Iowa 2001); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386 (E.D.Pa. 2001); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457 (E.D.Pa. 2000); *Kolar v. Rite Aid Corp.*, 2003 WL 1257272 (E.D.Pa. Mar. 11, 2003); *Amara v. Cigna Corp.*, No. Civ. 3:01CV2361 (DJS), 2002 WL 31993224 (D. Conn. Dec. 20, 2002); *Koch v. Dwyer*, 2001 WL 289972 (S.D.N.Y. March 23, 2001); *Clauser v. Newell Rubbermaid, Inc.*, 2000 WL 1053395 (E.D.Pa. July 31, 2000); *White v. Sundstrand Corp.*, 1999 WL 787455 (N.D. Ill. Sept. 30, 1999); *Kane v. United Indep. Union Welfare Fund*, 1998 WL 78985 (E.D.Pa. Feb. 24, 1998).

16

settlement, any possible barriers to class treatment have been eliminated, and the Court should certify a settlement class.

To qualify for class treatment, claims must meet all four requirements of Rule 23(a), and at least one of the three requirements of Rule 23(b). *See Ogden v. Americredit Corp.*, 225 F.R.D. 529, 531 (N.D. Tex. 2005) (Means, J.)  Each requirement is met here.

### A.     All the Requirements of Rule 23(a) Are Met

Rule 23(a) has four requirements:  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  Fed. R. Civ. P. 23(a)(1)-(4).  Plaintiffs satisfy each requirements.

#### 1.     Numerosity

Rule 23(a)(1) provides that a class may be certified if "the class is so numerous that joinder of all members is impracticable."  The numerosity requirement is met if the plaintiff provides some evidence of a reasonable numerical estimate of purported class members. *James v. City of Dallas,* 254 F.3d 551, 570 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002); *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000).  Here, according to Defendants' interrogatory responses, the number of participants in the 401(k) Plan was approximately 13,000.  Appendix, p. 9 [Exhibit 1 to the Kravitz Declaration].  Numerosity is thus satisfied.

#### 2.     Commonality

Rule 23(a)(2) is satisfied where "there are questions of law or fact common to the class."  "The threshold of 'commonality' is not high." *Forbush v. J.C. Penny Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (citation omitted).  All that is required for each class is that there is one common question of law or fact." *See Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998) (commonality

requirement is met if any single question "affect[s] all or a significant number of the putative class members"); *In re AOL Time Warner ERISA Litig.*, 2006 WL 2789862 at *2 (S.D.N.Y. Sept. 27, 2006) ("ERISA breach of fiduciary duty actions regularly present common questions of law and fact.").

Numerous common factual and legal issues apply across the class, including without limitation whether: (i) Defendants breached their fiduciary duty of loyalty under ERISA, (ii) Defendants violated their fiduciary duty under ERISA to prudently manage the investments of the Plans, (iii) Putnam charged the 401(k) Plan excessive fees; (iv) Putnam engaged in "revenue sharing" transactions that violated ERISA § 406, and (v) Defendants did nothing to remedy any of the foregoing conduct. Commonality is therefore met. *See, e.g., Time Warner*, 2006 WL 2789862 at *2 (commonality satisfied based on following common issues: "the identification of fiduciaries, whether the defendants acted as fiduciaries, and the existence of ERISA violations").

### 3. Typicality

Typicality is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Like commonality, the test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999), *cert. denied*, 528 U.S. 1159 (2000) (citation omitted). "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas, Tex.*, 254

18

F.3d at 571, *cert. denied*, 534 U.S. 1113 (2002), (citation omitted).  The instant claims

satisfy this element because they arise under ERISA § 502(a)(2) on behalf of the Plans,

and the claims concern uniform, class-wide conduct that affected the Plans, as a whole –

i.e., imprudent decision-making relating to the selection and monitoring of company

stock and underperforming, expensive mutual funds combined with the failure to

disgorge excessive fees paid to fiduciary service providers that caused losses to the

401(k) Plan.  As noted in footnote 7, above, courts have overwhelmingly found the

typicality requirement met in highly similar cases.  *See, e.g.*, *DiFelice*, 235 F.R.D. at 79

("given the representative nature of a suit filed pursuant to ERISA 502(a)(2), DiFelice's

claim is necessarily typical of those of the rest of the class").

　　　　Moreover, Defendants' previous objections to typicality arose from affirmative

defenses that they intended to assert if the case moved forward: ERISA § 404(c), the

statute of limitations, and alleged releases by class members. (*See* Class Cert. Opp. at 17-

24.)  While Plaintiffs disagree that any of these defenses would prevent certification of a

class (*see* Class Cert. Reply at 13-20), any typicality concerns melt away now that

Defendants have agreed to waive those defenses for purposes of this settlement.

### 　　　　4.　　Adequacy

　　　　Rule 23(a)(4) permits certification if "the representative parties will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement

is satisfied if the named representatives' interests are not "antagonistic to those of the

other class members, and if the representatives' attorneys are able to prosecute the action

vigorously." *See Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (N.D. Tex. 2000).  The

Fifth Circuit describes the adequacy requirement as mandating an inquiry into "the

willingness and ability of the representatives to take an active role in and control the

litigation to protect the interests of absentees." *Stoffels v. SBC Communs., Inc.*, 238

F.R.D. 446, 454 (W.D. Tex. 2006) (citation omitted).

Here, the named representatives have participated in the pre-trial process, sat

through depositions, and generally shown their willingness and ability to pilot the claims

of the class. Defendants at one time contended that the statute of limitations and releases

affected the named representatives' adequacy. (Class Cert. Opp. at 22-33.) While

Plaintiffs disagree with this assertion (*see* Class Cert Reply at 20-22), those defenses are

waived for the purpose of this settlement and therefore do not affect the adequacy

calculus.

Similarly, Plaintiffs' counsel have vigorously prosecuted this case and have

significant successful experience in similar litigation. Attorneys Ronald S. Kravitz, T.J.

McKenna, and Lee Squitieri have represented clients in connection with numerous

ERISA class actions involving allegations of fiduciary breach. (*See* footnote 5, *supra*)

**B.     The Settlement Class Should Be Certified under Rule 23(b)(1)**

Rule 23(b)(1) allows class certification where individualized adjudications would

prejudice others. Subpart (A) protects defendants from the risk of having multiple cases

establish incompatible standards of conduct. Subpart (B) protects unnamed plaintiffs

who would be bound by the judgment.[10] While only one subsection of Rule 23(b) needs

to be met, the instant claims satisfy both subparts of Rule 23(b)(1).

---

[10] Rule 23(b)(1) provides for class certification where:

(1) prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

20

Because § 502(a)(2) claims seek to establish fiduciary obligations on the part of

the defendants, and are brought on behalf of the plan, which will be bound by the results

of the case, courts routinely certify ERISA cases for breach of fiduciary duty under both

subparts of Rule 23(b)(1). *See, e.g., Kolar*, 2003 WL 1257272 at *3 (Because of

ERISA's distinctive representative capacity and remedial provisions, "ERISA litigation

of this nature presents a paradigmatic example of a (b)(1) class."). As one court

explained:

> this is an action for breach of fiduciary duty brought under § 1132(a)(2)
> on behalf of the Plan. Because the allegations in the Complaint
> implicate misconduct in the management of the Plan as a whole,
> disparate lawsuits by individual participants would raise the specter of
> "varying adjudications." Similarly, allowing multiple actions, each of
> which would seek the same relief from the Defendants on behalf of the
> Plan, would potentially prejudice individual class members and would
> threaten to create "incompatible standards of conduct" for the
> Defendants. These are precisely the problems Rule 23(b)(1) was
> intended to avoid.

*In re Polaroid ERISA Litigation*, 240 F.R.D. at 65 (S.D.N.Y. 2006).[11]

---

> (B) adjudications with respect to individual class members
> that, as a practical matter, would be dispositive of the
> interests of the other members not parties to the individual
> adjudications or would substantially impair or impede their
> ability to protect their interests.

[11] *See also DiFelice*, 235 F.R.D. at 80 ("Alleged breaches by a fiduciary to a large
class of beneficiaries present an especially appropriate instance for treatment under Rule
23(b)(1)") (citing Committee Notes to Rule 23); *In re Global Crossing Ltd. Sec. & ERISA
Litig.*, 225 F.R.D. at 453 (same); *Tussey*, 2007 WL 4289694, at *6 (W.D.Mo. Dec. 3,
2007); *In re Schering-Plough Corp. ERISA Litig.*, 2008 U.S. Dist. LEXIS 89718, *29-31
(D.N.J. Jan. 31, 2008) (same, collecting cases); *Kane*, 1998 WL 78985, at *25 (quotation
omitted) ("Because a plan participant or beneficiary may bring an action to remedy
breaches of fiduciary duty only in a representative capacity, such an action affects all
participants and beneficiaries, albeit indirectly. [citation] Since Counts X and XI are
brought by Schweizer, Robb and Cashin in their representative capacity, the Court finds
that class certification for these claims is proper under Rule 23(b)(1)(B)."); *In re Williams
Co. ERISA Litig.*, 231 F.R.D. at 425 ("due to ERISA's distinctive 'representative
capacity' and remedial provisions, class treatment under Rule 23(b)(1)(B) is appropriate
in this case"); *Lively v. Dynegy, Inc.*, 2007 U.S. Dist. LEXIS 14794, *53-56 (S.D. Ill.

21

### 1.     Certification Is Warranted under Rule 23(b)(1)(A)

Certification under this subpart is proper because Defendants could be subject to inconsistent obligations. For example, if one class member were successful in requiring Defendants to restore to the 401(k) Plan all of the revenue sharing payments received by Putnam, whereas another court found that Defendants were not required to do so, Defendants would have inconsistent legal requirements (Court Orders) mandating how they behave. By way of further example, if one court found that Putnam Voyager was an imprudent investment in 2004 and required Defendants to restore to the 401(k) Plan all losses caused by offering the fund, and another court found that the same fund was not imprudent until 2005, 2006, or not at all, what would Defendants' obligations be? For this reason, a class should be certified under Rule 23(b)(1)(A). *See id.*

### 2.     Certification Is Warranted under Rule 23(b)(1)(B)

Certification is also warranted under this subsection. As one court has explained:

> A note to Rule 23 explains that Rule 23(b)(1)(B) applies
> "to an action which charges a breach of trust by an
> indenture trustee or other fiduciary similarly affecting the
> members of a large class of security holders or other
> beneficiaries, and which requires an accounting or like
> measures to restore the subject of the trust." ...
> ¶ As a matter of law, the relief sought by Plaintiffs is
> directed to the Plans, rather than to individual Plan
> participants. A breach of fiduciary duty claim brought by
> one member of a retirement plan necessarily affects the
> rights of the rest of the plan members to assert that claim,
> as the plan member seeks recovery on behalf of the plan as
> an entity. Accordingly, by the very nature of the relief
> sought, the prosecution of separate actions would risk
> prejudice to putative class members.

---

Mar. 2, 2007) (collecting cases); *Smith v. AON Corp.*, 238 F.R.D. 609, 615 (N.D. Ill. 2006); ("Defendants generally concede that the court should certify a Class pursuant to Rule 23(b)(1).").

22

*Time-Warner*, 2006 WL 2789862, at *12-13 (citations omitted).

## **CONCLUSION**

Based on the foregoing, Plaintiffs request that the Court approve the settlement --

first on a preliminary basis, and then at the final fairness hearing it conducts. The Court

should also preliminarily certify a class in this matter, pending final resolution at the

hearing, and approve the form of Class Notice.

Dated:  September 30, 2010

LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR
LLP


By:___*/s/ Ronald S. Kravitz*_____
      Ronald S. Kravitz

AJAMIE LLP


By:___*/s/ Thomas R. Ajamie*_____
      Thomas R. Ajamie


      Attorneys for Plaintiff, Jeffrey V.
      Cormier


GAINEY & MCKENNA


By:___*/s/ Thomas J. McKenna*_____
      Thomas J. McKenna
      Attorneys for Plaintiffs Robert
      Outlaw and Robert Maxwell


SQUITIERI & FEARON LLP


By:___*/s/ Lee Squitieri*_____
      Lee Squitieri
      Attorneys for Plaintiff Alan
      Goldstein

23

## CERTIFICATE OF SERVICE

On September 30, 2010, I electronically submitted the foregoing **MOTION FOR**

**PRELIMINARY APPROVAL OF SETTLEMENT** with the clerk of court for the U.S.

District Court, Northern District of Texas, using the electronic case files system of the

court.  I hereby certify that I have served the following attorneys of record who have

consented to accept the Court's Notice as service of the foregoing document by electronic

means:

David E. Keltner
Kelly Hart & Hallman
201 Main St., Suite 2500
Fort Worth, TX 76102-3194
817/878-3560
Fax: 817/878-9760
Email: david.keltner@khh.com

Brian T. Ortelere
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103
215/963-5000
Email: bortelere@morganlewis.com

Hugh G. Connor, II
Kelly Hart & Hallman
201 Main St., Suite 2500
Fort Worth, TX 76102-3194
817/332-2500
Email: hugh_connor@khh.com

Jeremy P Blumenfeld
Morgan Lewis & Bockius - Philadelphia
1701 Market St., Suite 2000
Philadelphia, PA 19103
215/963-5258
Email: jblumenfeld@morganlewis.com

[Continued next page]

0093014/001/ 49384v02

Marshall M. Searcy
Kelly Hart & Hallman
201 Main St., Suite 2500
Fort Worth, TX 76102-3194
817/332-2500
Fax: 817/878-9280
Email: marshall_searcy@khh.com

Victoria L. Gorokhovich
Morgan Lewis & Bockius - Philadelphia
1701 Market St., Suite 2000
Philadelphia, PA 19103
215/963-5642
Fax: 215/963-5001
Email: vgorokhovich@morganlewis.com

_____/s/ Ronald S. Kravitz_____

25